VALCOUR BUILDERS, INC., Claimant, *v.* STATE OF NEW YORK, Defendant. (Claim No. 45349.)

Court of Claims, January 25, 1967.

*Jerry, Lewis & Harvey* (*John L. Bell* of counsel), for claimant. *Louis J. Lefkowitz, Attorney-General* (*Carl Rosenbloom* of counsel), for defendant.

HENRY W. LENGYEL, J. This is a claim for the appropriation of claimant's land pursuant to sections 307 and 355 of the Education Law, which proceeding is described as State University of New York, State University College at Plattsburgh, Clinton County, Map No. 91.

Claimant was the owner of subject property by reason of a deed dated November 8, 1963, from Gerald W. Tremblay, grantor, and recorded in the Clinton County Clerk's office on November 26, 1963, in Liber 470 of Deeds at page 729. Claimant paid $20,000 for said property.

The property conveyed by the above deed contained 2.56± acres and was the northern portion of lands owned by Gerald W. Tremblay. Claimant took the position that said 2.56± acres were landlocked at the date of purchase and the State did not dispute this fact. On cross-examination the State's appraiser was asked whether or not the property was landlocked at the date of purchase and answered that technically speaking it was. Obviously, the claimant was indirectly saying to the court, if this property was worth $20,000 when landlocked, just think how much more valuable it was when it had the access which was developed after the purchase but before the appropriation. We reject claimant's theory of value insofar as it might flow from the alleged landlocked situation, for two reasons.

Legally, the 2.56± acres were not landlocked at the date of purchase. As stated in *Palmer* v. *Palmer* (150 N. Y. 139, 146–147): "Where a person conveys to another a piece of land surrounded by lands of the grantor, the grantee and those claiming under him have a right of way by necessity through the lands of the grantor as an incident of the grant. This principle applies where the land conveyed is surrounded in part by the lands of the grantor and in part by the lands of a third person. * * * A right of way of necessity * * * is not, however, a perpetual right of way, but continues only so long as the necessity exists." (See, also, 17 N. Y. Jur., Easements and Licenses, § 87.) The claimant, therefore, had a right of way by necessity across the remaining lands of Tremblay to Rugar Street on November 26, 1963. This right of way was extinguished when the City of Plattsburgh accepted, on November 26, 1963, claimant's deed and Ollivetti's deed to permit an extension of Dennis Avenue along the south boundary of claimant's remaining property and an extension of Sanborn Avenue along the east boundary of claimant's property. Claimant's property was never landlocked.

Claimant's secretary and treasurer was an experienced and well qualified building contractor and land developer. It is our opinion that he would not permit claimant to be so financially improvident as to invest $20,000 in a landlocked parcel of land. We believe that claimant full well knew what access rights it had when its deed was recorded on November 26, 1963. We note that claimant's deed which was dated November 8, 1963, was not recorded until November 26, 1963, some 6 days after the date of the Ollivetti deed, which provided for the transfer of the required lands to the City of Plattsburgh for the extension of Sanborn Avenue. It is of interest that claimant's survey of its proposed subdivision was completed on October 22, 1963 and filed with the Clinton County Clerk on November 7, 1963; and, that claimant had obtained preliminary approval from the Champlain Valley Federal Loan for the required construction financing. Such sureness of purpose militates against the position that this was landlocked property with access on the date of purchase being left in the laps of the gods of chance. It is our opinion, and we so find, that claimant paid fair market value for a parcel of land with legal access, but without dedicated streets; and, with a highest and best use, on November 26, 1963, of potential subdivision land for multiple occupancy residence buildings.

Subject proceeding appropriated 1.56± acres of claimant's land, which was all of claimant's land remaining after the

conveyance of 1± acres to the City of Plattsburgh for street purposes.

Claimant's appraiser stated that he relied upon the market data approach to obtain his fair market value; and, further, that he used the land residual value obtained from the capitalization approach as a check upon the fair market value obtained from comparable sales. He stated that the capitalization approach established a value of $58,160 and the market data approach a value of $50,000 which was his appraised damage figure.

The State objected to claimant's testimony which related to that which had been accomplished to prepare this property for subdivision purposes; to construction costs; to the use of projected net income in the appraiser's capitalization approach; and, to the capitalization approach. We reserved decision on said objections. The bases for such objection were the legal principles set forth in: *Levitin* v. *State of New York* (12 A D 2d 6); *Hewitt* v. *State of New York* (18 A D 2d 1128); *Barra* v. *State of New York* (22 A D 2d 750) and *Tarricone* v. *State of New York* (23 A D 2d 804). (See, also, *Fort Amherst Realty Co.* v. *State of New York* (27 A D 2d 582.)

The line of cases which follow the *Hewitt* (*supra*) doctrine stand for the principle that vacant land, which has a highest and best use of potential subdivision, cannot be valued as though it had been subdivided at the date of appropriation. Such land must be valued as vacant acreage with an increment in value because of the potentiality of a higher use.

The *Levitin* (*supra*) decision established that it is improper to determine the fair market value of vacant, unimproved land by a capitalization of speculative income from a nonexistent future improvement. (See, also, *Matter of City of New York* [*Blackwell's Is. Bridge*], 118 App. Div. 272; *Brighton Plaza* v. *State of New York,* 32 Misc 2d 266.)

Claimant's counsel acknowledged the above cases and legal principles but contended that subject claim fell within the ambit of *Mattydale Shopping Center* v. *State of New York* (303 N. Y. 974) and *Levin* v. *State of New York* (13 N Y 2d 87) which, in his opinion, established an exception to said principles.

We have examined the lower court and the Court of Appeals decisions in *Mattydale* (*supra*) and *Levin* (*supra*).

The *Levin* (*supra*) decision, in our opinion, was a logical and practical extension of and application of the rules of the market place to the appraisal doctrine enunciated in *Levitin* (*supra*).

As Chief Judge Fuld stated in *Levin* (*supra,* pp. 91–92) the trial court " did not fall into the error of valuing the property by capitalizing the net rental income as might have been proper if the building had been completed and rent had commenced. * * * It does not follow, however, that the Court of Claims erred in receiving the evidence of the lease, the prospective net rental income, the plans to develop the subject property and the evidence relating to construction costs. * * * What the purchaser would pay for the property would undoubtedly be influenced by the extent to which the property had been exploited. * * * the purchaser would make two different estimates: first, what rental income could be derived from the property; second, what would have to be paid to acquire the property, that is, its market value. Although these are different inquiries * * * where the dealings in the property had been crystallized in binding agreement and were on the road to fulfillment, the prospective purchaser * * * would have given careful consideration to the first, albeit subordinate, question of prospective rentals and it follows that the Court of Claims was justified in considering all these facts."

In the subject claim the claimant had filed a subdivision map; it had deeded part of its own land and had arranged to have other land deeded to the City of Plattsburgh sufficient to establish the dedication of two streets bordering the appropriated land; it had negotiated and arranged preliminarily for financing; it had had architectural renderings and preliminary specifications prepared for the proposed buildings; the claimant, a competent construction firm, was prepared to commence construction; and, it had deposited with the City of Plattsburgh a check for $6,000 to cover its share of the installation of water and sewage systems. The check was returned to the claimant when the city was unofficially informed that subject property was to be appropriated. We have considered all of the above items in arriving at our fair market value and insofar as the State's motion to strike relates to those items of proof it is hereby denied.

However, we permitted the claimant to testify as to construction costs and prospective income and reserved decision on the State's objections and motion to strike these items of testimony. We also permitted the claimant's appraiser to testify as to his capitalization of income and the land value obtained therefrom. We reserved decision on the State's objections and motion to strike such testimony. We now sustain such objections and grant the motion to strike. We have not considered prospective income nor have we capitalized such income in

arriving at our fair market value. The development progress of this property had not "crystallized" sufficiently to permit us properly so to do.

As was stated in *Wer Realty* v. *State of New York* (26 A D 2d 732, 733): "the evidence falls far short of establishing a basis for the economic approach whereby claimant lessee would capitalize hypothetical income over a long term in future, from a number of varied, unobligated tenants, occupying hypothetical buildings neither contracted for nor designed." (See, also, Sachman, Economic Approach to Valuation, *The Appraisal Journal*, Oct., 1966, pp. 519–522.)

We have considered the comparable sales used by both appraisers with the greatest weight being given to State's sale No. 3, page 18, Exhibit "A" and the sale of subject property. We have adjusted these sales and, in particular, have noted the preparations made by claimant for the use of its property. We have considered the need in the City of Plattsburgh for this type of housing, the lack of suitable vacant land in this area for such housing and excellent location of subject property. We believe the claimant acted in good faith and without foreknowledge of the appropriation. Certainly, the evidence does not indicate otherwise. We find that the fair market value of said property prior to this total appropriation was $34,000.

On the second day of the trial and after the claimant's appraiser had completed his testimony and had, with the consent of both counsel, left the courtroom, the Assistant Attorney-General moved to strike his testimony, relative to the capitalization approach on the grounds that the data which he relied upon was not contained within his filed appraisal and, therefore, his appraisal did not comply with rule 25a of the Rules of the Court of Claims. We reserved decision on the motion. We now deny said motion as it was not presented to us at a proper time in the trial. The failure to object on the stated ground at the proper time must be construed as a waiver. (See Richardson, Evidence, [9th ed.], § 542; Fisch, New York Evidence, § 19.)

Although we denied the State's motion, we believe we should discuss rule 25a of the Rules of the Court of Claims. It is a comparatively new rule (March 1, 1965 and as amd. July 1, 1966) and there has been wide variance in the appraisal material contained within the covers of the filed appraisals. Generally speaking, the State's appraisals have complied with both the letter and the spirit of the rule. The problem has been with claimants' filed appraisals, possibly because claimants' attorneys are not as a general rule, as familiar with appropriation

law and procedures as are the Assistant Attorneys-General who are engaged in this type of litigation on a daily basis. Whatever the reason we have been lenient and liberal in our rulings on whether there has been compliance with rule 25a. However, the rule is now completing its second full year of existence and the time has come to require literal compliance. Rule 25a has had a most salutary effect upon the disposition of claims on the Court of Claims' calendars. It is our opinion that, if full compliance with the requirements of the rule is required, it will have an even more salutary effect upon pretrial disposition of claims and the days in trial required to dispose of fully litigated claims.

As stated in subdivision 7 of rule 25a, as amended, " The purposes and intent of this Rule are  *  *  *  (b) *to compel a full and complete disclosure* so as to enable all parties to more adequately and intelligently prepare for a trial of the issues." (Italics added.) (See, also, Rules of Court of Claims, rule 25a, subd. 8 [March 1, 1965].) Certainly, the requirement of full and complete disclosure is in line with the liberalized disclosure provisions set forth in the CPLR and should not come as a surprise to lawyers engaged in appropriation litigation.

Subdivision 1 of rule 25a, as amended, requires the filed appraisals to " set forth separately the valuation of land and improvements and *data upon which such evaluations are based* ". (Italics added.) (See, also, rule 25a, subd. 1 [March 1, 1965].) The Court of Claims has also added to said rule a suggested form for appraisals which should indicate to counsel and to appraisers, if they ever take the time to familiarize themselves with the rules of the court in which they are testifying as " experts ", as to that which the Court of Claims requires to be contained within the filed appraisals. We are not only interested in what the appraiser believes a piece of property is worth but also we wish to know why he believes it is worth " X " number of dollars and how he arrived at his conclusion. It should perhaps be noted that the appellate courts have stated that they wish to know the trial court's findings as to the various factors considered in arriving at its decision. (See CPLR 4213, subd. [b]; *Conklin* v. *State of New York*, 22 A D 2d 481 [3d Dept.]; *Matter of City of New York [Public School No. 92]*, 22 A D 2d 782 [1st Dept.], affd. 16 N Y 2d 979; *Driskell* v. *Alfano*, 12 A D 2d 973 [2d Dept.]; *Moore* v. *State of New York*, 23 A D 2d 525 [4th Dept.], affd. 17 N Y 2d 690.) If all of these factors are contained in the filed appraisals, as required by rule 25a, trial counsel should

find it less difficult to present the factors upon which their
"expert" relied and to contravene, if such procedure is indi-
cated, their opponent's factors. Certainly, such procedure would
greatly lessen the possibility that the trial court will be faced
at the completion of the trial with a record deficient in factors
necessary to a solid award. If these factors are not contained
in appraisals filed after this date, it might become necessary
to sustain objections to appraisal testimony or to grant motions
to strike. Rule 25a has been in existence long enough to expect
full and literal compliance with the requirements of said rule.