Milton Alpert, J.
This is a claim for the appropriation of claimants’ land pursuant to section 30 of the Highway Law, which proceeding is described as South Cairo-Cairo, S. H. No. 887, Greene County, Map No. 47, Parcel No. 54.
The aforesaid map and description were filed in the office of the County Clerk of Greene County on April 14, 1964 and personal service was made on the claimants on May 11,1964.
The claim was timely filed with the Clerk of the Court of Claims and the Attorney-General on May 21, 1968, pursuant to the provisions of a special enabling act of the Legislature as construed by an order of this court filed July 30, 1968 (L. 1968, ch. 29; Court of Claims Motion No. M-11009), and has not been assigned or submitted to any other court or tribunal for audit or determination.
*380 The court adopts the description of the appropriated property as shown on the map and description filed in the Greene County Clerk’s office, a copy of which is attached to the claim and same is incorporated herein by reference.
Claimants were the owners of the property by reason of a deed dated May 9, 1952 from Leo Bisazza and Rosina Bisazza, his wife, grantors, to Charles Parisi and Grace Parisi, his wife, grantees, recorded in the Greene County Clerk’s office on May 9, 1952, in Liber 327 of Deeds, at Page 581.
Before the appropriation, the property consisted of 0.650± acres, located on the north side of Boute 23 in the Town of Cairo in Greene County. The parcel was almost rectangular in shape and had 173± feet of highway frontage. On the west, it was 270± feet in depth; on the east, 205± feet in depth. The rear property line was 103± feet long. The property was at grade, was level and cleared.
Situate on the parcel were a 17-room dwelling and tourist home combination, 2 cottages and a shed. Two wells, a sewage disposal system, a crushed stone drive and parking area, and a shuffleboard court were among the land improvements contained on the parcel, as well as some trees, shrubbery and landscaping. Along the western boundary of the parcel was a stone wall. Claimants operated a boardinghouse for summer tourists on the premises and called their property “ Indian Lodge.”
The appropriation, taken for highway widening purposes, was in the form of a frontage strip the entire length of the highway frontage to a depth of 36± feet on the west and 21± feet on the east. The appropriated strip contained 4593± square feet or 0.15± acres. Located within the appropriated parcel were some of the crushed stone drive and parking area, the shuffleboard court, 1 of the 2 wells (the auxiliary well), a portion of the stone wall, some shrubbery, grassy area and trees, including a tree to which had been affixed a two-sided sign with lights.
The improvement reduced the setback of claimants’ main building from the State’s right of way. Bunning along the improvement are a new drainage ditch and guard rails. New entranceways were constructed for use by claimants.
Claimants’ expert assigned a before value to the property of $30,300, assigning $15,000 as the value of the residence, $7,000 and $2,000, respectively, as the values of the cottages, $1,200 for a storage building, $3,000 for the %± of an acre of land valued at $4,000 an acre, and $2,100 for land improvements as itemized in his appraisal (wells, sewage disposal system and shuffleboard court). He found an after value of $18,300 which resulted in damages of $12,000. The direct damage was $420 *381 for 0.105 ± acres at $4,000 an acre, $500 for the well and $150 for the shuffleboard court. His consequential damages in Ms written appraisal were $10,815 which he attributed to the adverse effects of the change of grade ($2,923) and to the adverse effects of the reduced setback and loss of parking area in front ($7,892)
The State’s expert found a before value of $16,000 of which $1,300 was for the land and $13,700 for the buildings and $1,000 for land improvements. His value after the appropriation was $15,000, of which $1,075 was for land and $13,225 for the buildings and $700 for the land improvements. His damages, therefore, were $1,000: — $225 for the land taken, $300 for the improvements contained thereon, and $475 as consequential damages.
After careful consideration of the testimony at the trial, the appraisals and exhibits in evidence, and the demeanor of the witnesses, the court finds as follows:
1. The highest and best use of the property prior to the appropriation was for a combination residential and commercial use similar to that to which the subject property was being put; namely, tourist accommodations. The highest and best use after the appropriation was the same, except as diminished by the appropriation.
2. With respect to land and building valuations and the use of comparable sales, the court found difficulty with the appraisal filed and submitted in evidence on behalf of the claimants in pursuance of the requirements of rule 25a of the Court of Claims (22 NYCRR 1200.27 [g]). The court finds therein a paucity of information and facts.
The purpose and intent of rule 25a of the Court of Claims is set forth in paragraph 7 of the rule. As stated therein, the rule was adopted 1 ‘ to compel a full and complete disclosure so as to enable all parties to more adequately and intelligently prepare for a trial of the issues.” This is in harmony with the requirement of the liberalized disclosure provisions set forth in the CPLR and should not come as a surprise to attorneys engaged in appropriation litigation (Valcour Bldrs. v. State of New York, 52 Misc 2d 760).
Appellate courts have held that where sales of other parcels are used as criteria in the evaluation of a subject property, such sales need to be adjusted to differences between one another and between each of them and the subject property (Matter of City of N. Y. [Shorefront High School — Rudnick], 25 N Y 2d 146, 148, 149; Latham Holding Co. v. State of New York, 16 N Y 2d 41; Verni v. State of New York, 31 A D 2d 727). The adjustments applied to comparable sales and the data upon wMch such *382 adjustments are based constitute vital information upon which the appraisal money values are based and should be contained within the appraisal.
An expert may make adjustments when considering such sales, the degree of comparability then becoming a question of fact (Frieberger v. State of New York, 33 A D 2d 619; Kastelic v. State of New York, 29 A D 2d 803). An expert’s opinion has little probative value unless an explanation of all necessary adjustments of the comparable sales to the subject sale has been made (Wright v. State of New York, 33 A D 2d 616; see, also, Ridgeway Assoc. v. State of New York, 32 A D 2d 851; Svoboda v. State of New York, 28 A D 2d 1056). A sufficient and-, adequate explanation as to how the adjustments were made is required (Warren v. State of New York, 33 A D 2d 819). Explanations also must be based upon facts and not assumptions (see, Richards v. State of New York, 32 A D 2d 591).
After reviewing the above cases and rule 25a and its purpose and wording, the court concludes that under them the appraiser is expected to set forth his explanations and adjustments i/n ivriting in his appraisal. This is so because the appraiser is expected to show how he arrived at this value conclusions by means of comparing the subject property with sales properties advanced by Mm in the appraisal as comparable. How can sales be advanced as comparable unless the appraiser explains in his appraisal why and how he regards them as comparable? And how can he show how he arrived at his value conclusions unless he explains what adjustments he would make to relate such sales to the valuation of the subject property?
A purpose of the preparation and exchange of written appraisals before trial, as previously stated, is to enable the parties to prepare for trial with knowledge of each other’s valuations and the foundations and justifications thereof. Here, too, it is apparent that written adjustments and explanations are expected. A bare listing of sales does not inform the adverse party as to the roles which various sales played in leading the appraiser to his conclusions as to values (cf. Latham Holding Co. v. State of New York, 16 N Y 2d 41, supra). Written explanations and adjustments clearly are necessary to give the adverse party a reasonable picture before trial so that such latter party may have basic prior knowledge to prepare for trial.
Still another justification for the expectation of written explanations and adjustments is that it is not expected that one party will file a bare-bones appraisal and later fill in the flesh and details of its appraisal after having reviewed its adversary’s appraisal. This would give an unfair advantage to the *383 former. And if both parties resorted to the bare-bones tactic, neither appraisal, when exchanged, would serve the purpose for which the prior-to-trial exchange requirement was designed to accomplish.
Viewed from the above discussion and analysis, and in light of the present existence of the appraisal requirement of rule 25a, the role of a service of a list of comparable sales pursuant to section 16 of the Court of Claims Act could, among other matters, be (1) in support of the appraisal and the sales advanced therein as comparable, (2) to bring before the court more recent or other sales not available or known when the appraisal was prepared, or (3) to justify minor revisions or corrections that do not impair the basic validity of the value conclusions in the filed appraisal.
The court realizes that there may at this time still be some exceptional situations involving early appraisals which were prepared when appraisers and attorneys practicing in this court were not fully familiar with the need for written explanations and adjustments concerning comparability. With respect to situations of this type and where the procedure hereinafter described for amendment and revision is not utilized, the court in its discretion and in the interests of justice might permit an appraiser to make his explanations and adjustments by way of oral testimony at the trial. But, as the court disposes of the relatively few older appropriation claims on its calendars to which this unusual treatment might be accorded, and moves to the trial and disposition of recent takings and to the consideration of recently-prepared appraisals, adequate appraisals with written explanations and adjustments must be expected — and the appraisers preparing appraisals for claims pending in this court and the attorneys who practice here should be expected now to have knowledge of and to satisfy the above-described requirements concerning the written content of the appraisals which they submit for exchange and use at trial.
Where already-filed appraisals are concerned, involving appropriation claims yet to be tried, claimants’ attorneys would be well-advised to move under rule 25a, whenever possible, for permission to amend and revise such filed appraisals in order to conform them with the above-described requirements and other applicable requirements such as, for example, setting valuations up in terms of before and after values with the differences representing appraised damages.
With respect to the problem of cost to a claimant of an appraisal of the type described above, it is the court’s view that it should not require much more effort or take the claimant’s *384 appraiser very much longer to prepare and include in his appraisal adequate explanations and adjustments. He should expect, when he thinks through and prepares his appraisal, that eventually he will have to testify as to this information at the trial and, therefore, should be expected to have gone through the necessary thought processes. Accordingly, costs to claimants should not be greater because of the need for an appraiser to include such written explanations and adjustments in his appraisal as originally prepared.
Claimants ’ appraisal was filed pursuant to rule 25a on March 6, 1969. Based on the above discussion, the court finds that such appraisal was required to contain written explanations and adjustments with respect to the sales advanced therein as comparable to the subject property. The appraisal did not contain such written explanations and adjustments. At the trial, the court permitted claimants’ appraiser to testify conditionally concerning the same with respect to his sales 2 and 3 over the objections of the State, upon which objections decision was reserved. The court now sustains such objections and, accordingly, will not give any consideration or weight to such testimony concerning explanations and adjustments to such sales.
3. The above findings of the court have essential effect on the valuation of the buildings and the improvements because claimants ’ appraiser had intended to utilize his sales 2 and 3 to value the buildings.
Accordingly, the court for before and after values of the buildings and improvements goes to pages 22-23 and 31-32 of the State’s appraisal for the before and after values thereof. There, the State’s appraiser utilized his sales CO-85 and CL-63 to arrive at his before and after values of $16,000 for the entire property in the before situation and $15,000 in the after situation. The court will value the land separately below and, accordingly, now refers to these two sales with respect to before and after values of the buildings and land improvements.
With respect to these sales, the State notes that the taking here was approximately three years and eight months after the sale in CO-85 and about a year after the sale in CL-63. Also, the subject property had more rooms than either sale, had a better location than CL-63, the subject’s cottages were regarded as more valuable than the sale cottages, but the subject did not have as much land as either sale. The court having in mind the necessity for further affirmative adjustments for time, more rooms, better cottages, and better location as against sale CL-63, finds that the before fair market value of the buildings and improvements of the subject property, exclusive of land *385 was $15,000 (Milsap v. State of New York, 32 A D 2d 586; supplemental decision on remission, Claim No. 46884, dated May 19, 1969 ; affd. 32 A D 2d 1017).
4. With respect to land value, the court has considered claimants’ sale 1 and his appraiser’s testimony concerning the same wherein he valued claimants’ approximately %± of an acre of land at $3,000 based on a $4,000 per acre valuation. The court has also considered State’s appraiser’s land sale CO-11 which was advanced as comparable. The court at this point finds that State’s sales CO-63 and CO-64 are not comparable in that they are sales in a residential development, off a main highway and, accordingly, not at all comparable to the subject property which was essentially commercial on a State highway. Considering, therefore, claimants’ sale 1 and State’s sale CO-11, the court finds that claimants’ sale 1 adjusted to the subject property is more indicative of the value of claimants’ land which was improved land. Based on claimants’ appraiser’s $4,000 per acre valuation, the court finds that the .65± acres, which was the before area of claimants ’ land, had a before value of $2,600 and an after value of $2,180 for the remaining .545± acres. This produces a direct damage of $420.
5. The court notes at this point that its before value of land was $2,600 and of the buildings and improvements $15,000, for a total of $17,600.
At the trial, the State requested that the court take judicial notice of this court’s decision in Claim No. 39160, filed August 5, 1963, with respect to a prior taking from the rear of the subject property on January 20, 1960. At the trial of the instant claim, claimants objected to this on the ground that the decision there was not after a full trial, but rather on the basis of a settlement and compromise of the claim. The claimants, however, requested that if this court were to take such notice, it should also consider the damage figures there. The court has investigated' this matter and has found that the decision in Claim No. 39160 was a formal proof type of trial apparently based on a settlement and compromise and with respect to which interest was not included in the award. The court has no way of knowing whether the parties agreed upon the before and after values or only on the amount of damages to be awarded inclusive of interest. With this posture of the prior decision before if, the court has determined not to take judicial notice of the after fair market value found therein, as requested by the State, nor of the amount of damages found therein, as suggested by the claimants.
The State also requested that the court take judicial notice of the assessed valuations of the land and buildings of the sub *386 ject property based on the 50% of full value reassessment program in Greene County (see Court of Claims Act, § 16, subd. 2). Based on these 50% assessments, the full values for 1963 would be $2,700 for land and $15,000 for improvements — total $17,700, and for 1964 the full values would be $2,400 for the land and $15,000 for improvements — total $17,400. Thus, the court’s before fair market value is in line with such reassessment valuations.
6. The court totals its award as follows:
Direct damages
Direct taking............................ $420
Land improvements taken................. 300
Consequential damage...................... 2,700
Total .................................$3,420
At the close of claimants ’ case, the State made seven motions which were renewed at the close of the trial. Decision was then reserved on such motions. The court now (a) denies the first motion concerning claimants’ sale 1; (b) notes that motions 2, 3, 4 and 5 were, in effect, disposed of by the court’s ruling earlier in this decision on the State’s objections to claimants’ sales 2 and 3, and (c) grants State’s motions 6 and 7.
The claimants are awarded the sum of $3,420 for all damages direct and consequential, with interest thereon from April 14, 1964 to October 14, 1964 and from May 21, 1968 to the date of entry of judgment herein.