Henry W. Lengyel, J.
This is a claim for the appropriation of claimants’ land pursuant to section 30 of the Highway Law, which proceeding is described as Amityville-Babylon, S.H. No. 693, Suffolk County, Map No. 46, Parcel No. 47 and Map No. 60, Parcel No. 61.
Claimants were the reputed owners of the property by reason of two deeds from Lindenhurst Shores, Inc., grantor, respectively dated April 13,1951 and December 19,1951.
Before the appropriation claimants’ property consisted of an irregularly shaped parcel of land which contained an area of *632 1.749± acres; or, 76,215± square feet. It had 240± feet on the south side of Montauk Highway, 315 ± feet on the west side of West Lake Drive and 100± feet on the west side of Maple Avenue.
The building improvement was approximately 7% years old. It was constructed on a concrete slab. The west side of the building consisted of large plate glass windows in stainless steel framings. The rear and east walls were constructed of stucco on concrete blocks. There was a 10-foot wide overhang constructed at the front of the building. The area under the overhang was enclosed with plate glass windows set in stainless steel framing. The short order and takeout food business was conducted in the area under the overhang. The main section of the building housed the kitchen and storage area (16 feet by 36 feet) on the east side and the dining room (18 feet by 30 feet 6 inches) on the west side. The dining room accommodated 40 patrons. There were two lavatory rooms at the rear of the dining room. Two small sheds, which housed the walk-in refrigerator and the air conditioning and heating unit, were attached to the rear of the main structure.
The land improvements consisted of 1,015 ± square feet of concrete walks and driveways, 10,288± square feet of blacktop paving, 90 linear feet of 4-inch pipe for leeching lines, six 8-foot precast cesspools, three catch basins, one 1,000-gallon septic tank and two dry wells for the air conditioner. Public water, gas and electricity were available to the site.
The property was located in the unincorporated area of Lindenhurst in the Town :of Babylon in Suffolk Bounty. The frontage along Montauk Highway was generally commercially developed. A large regional shopping center, which covered 50± acres of land north and south of Montauk Highway, was located several hundred feet east of claimants ’ property. Subject property was separated from the shopping center by a narrow strip of land owned by a third party, by West Lake Drive and by a large creek or canal. The north end of the property was located in the Business “ E ” zone and the south end of the property was zoned Residential “ B ”.
The highest and best use of subject property before the appropriation was commercial for the Business 11 E ” zone area and residential for the Residential “ G ” zone plus an increment for a possible zoning change to a business use. The remaining property retained the same highest and best use.
The State appropriated in fee an essentially rectangular parcel along the entire north road frontage of 240± feet. See Map 46, Parcel 47. Said parcel measured 240 feet by 84 feet by 240 *633 feet by 81 feet. The 'State also applied a temporary easement to 1,184± square feet to permit it to raze the building improvement.
The principal effects of the appropriation were to create a shallow strip of commercial land (19 feet by 120 feet) at the western end of the frontage and to reduce the developable depth of the eastern commercial parcel. The State appraiser thought the residential area had a value of $24,800 (4 plots at $6,200) for its residential quality plus a 50% increment for a reasonable probability of rezoning to a business use; or, a total value of $37,200. He did not consider this area damaged by the appropriation. The claimants’ appraiser in his trial appraisal (his second filed appraisal) found only a residential use for said parcel which he also valued as four plots at $6,200 each; or, a total value of $24,800. We note that the claimants’ appraiser had the opportunity to examine the State’s filed appraisal before he prepared his second filed appraisal. He did not find a reasonable probability of rezoning and damaged each of these plots by $700. On cross-examination he admitted that such a reasonable probability existed. We find such reasonability of rezoning and we accept the State’s market value of $37,200 for the residential parcel. We do not find that this area was damaged by the appropriation. If we had found that this parcel only had a residential use, we still would not have considered it damaged by the appropriation.
We have mentioned the fact that claimants filed two appraisals. The first appraisal considered that this was a total appropriation of 240± feet frontage for a depth of about 87± feet. Obviously the appraiser had not carefully examined, if he examined at all, claimants’ deeds, the filed subdivision map referred to in the deeds, the appropriation maps or the site itself. We doubt that he consulted with the claimants on more than a casual basis, if he consulted them at all. We find the same casual attitude in his second appraisal. For example, he did not examine the deed in his Sale No. 1. He indicated Sale 1 was vacant land whereas there was a small house on Sale 1 when sold. He found a plot of 17,000 square feet whereas it was approximately 16,000 square feet. In his Sale '2, he did not see the deed. He did not know of a 200 automobile parking easement reserved to the adjoining property. In his Sale No. 6 he found a frontage of 150 feet on Montauk Highway. Actually the deed conveyed 175 feet frontage. This gentleman was a well-qualified appraiser. However, his obvious carelessness, together with his rather self-important trial attitude, depreciates the value of his testimony.
*634 'Claimants’ trial appraisal did not contain adjustments for their market data land sales. The State objected to said adjustments being made orally at the trial. The objection wan in the main predicated upon the recent decision of Parisi v. State of New York (62 Misc 2d 378). (See, also, Valcour Bldrs. v. State of New York, 52 Misc 2d 760, 765.) In the Parisi decision Judge Milton Albert stated (p. 382) that “ the appraiser is expected to set forth his explanations and adjustments in writing in his appraisal.” The Judge further indicated (p. 383) that, if such adjustments were not contained in “ recently-prepared appraisals ”, the appraiser would not be permitted to testify to said adjustments. We agree with Judge Albert that, the more detail, explanation and adjustment contained within the filed appraisal, the better the trial record and the opportunity for the Trial Judge to evaluate fair market value. It has been our experience, when the adjustments of comparable sales are not contained within the appraisal report, the appraiser generally flounders and equivocates and does not make the best trial appearance. Therefore, we also prefer to have such adjustments contained within the appraisal report. However, we most respectfully disagree with our learned colleague that the adjustments of comparable sales are required to be in the appraisal report. The appellate decisions require them to be in the trial record (Ridgeway Assoc. v. State of New York, 32 A D 2d 851, 853; Svoboda v. State of New York, 28 A D 2d 1056; Wright v. State of New York, 33 A D 2d 616; Verni v. State of New York, 31 A D 2d 727); and, do not as yet require them to be set forth in the filed appraisal. Buie 25a of the Buies of the Court of Claims (22 NYCBB 1200.27), has not repealed or abrogated section 16 of the ¡Court of 'Claims Act. Furthermore, we do not believe a court rule can repeal, abrogate or amend a constitutional legislative enactment. (See Court of Claims Act, § 9, subd. 9.) As we all know, section 16 provides that either party to an appropriation claim may utilize comparable sales if they are served upon his opponent more than 20 days before the trial. Certainly, we would be making a nullity of section 16 if we held that a party could not state at the trial the manner in which it utilized the served comparable sales, i.e., the adjustments that were made. Therefore, it is our opinion that, although we prefer that a party state the adjustments of comparable sales in the filed appraisal, we cannot, until section 16 is amended or repealed, require such adjustments to be set forth in the filed appraisal.
There has been criticism of rule 25a of the Buies of the Court of Claims. The latest that has come to our attention was pub- *635 listed on July 15, 1970 in the New York Law Journal, page 1, entitled: “ A Case for a More Liberal Interpretation By the Courts of Bule 25-a ” by Sidney Z. Searles. The article stated in part: “ If the courts, however, continue to interpret Buie 25-a as requiring mathematical adjustments, the field of eminent domain and the problems of valuation will be tossed into a sea of confusion. At best, mathematical adjustments are not reflective of true market conditions and have been termed by competent appraisers as conjectural and arithmetical mumbo jumbo. In addition, and even more important, the interpretation of the rule by Appellate Courts and the 'Court of 'Claims in requiring adjustments and details has resulted in literally doubling and tripling of appraisal expenses for claimants who are at a serious disadvantage, as it is, in an appropriation case.” This statement is a complete misinterpretation of rule 25a. It is not the rule that requires the adjustments which are apparently anathema to Mr. Searles’ appraisers. It is the appellate decisions which, of course, must be followed by trial decisions, that require such adjustments. Bule 25a is merely the cargo carrier; the appellate, and to some extent trial, decisions have determined the cargo it should carry. Possibly, too much emphasis has been placed on mathematical adjustments and on precise adjustments of comparable sales. Perhaps, in an effort to move away from the subjective laissez-faire appraisal testimony of several years ago, too much emphasis has been placed upon objective standards for appraisal testimony. We respectfully suggest that appraising property is in the main a subjective art and we cannot confine said art within rigid objective standards. However, we emphatically agree that, trial court or appellate court, we must have more than naked, unsupported appraisal testimony upon which to base our valuation.
We note that Mr. Searles’ article (supra) seems to blame rule 25a for the increase in appraisal fees. We suggest that, rather than incorrectly making a whipping boy out of an excellent rule, the lawyers throughout the State who are concerned about the legal fees and appraisal expenses of the landowner seek legislation to rectify that situation. Possibly the various Bar Association committees who, at least to this untutored eye, seem to work at cross-purposes, should gather their collective strength to alleviate this situation. Of course, section 27 of the Court of 'Claims Act prevents this court from taxing costs or allowing counsel fees. However, this is a barrier which could be breached by determined fair-minded men. Section 28 of the Court of Claims Act was a small deviation from such rule. Incidentally, it has not been amended since 1920. An example of *636 the State being made subject to additional allowances may be found in section 722 of the Beal Property Tax Law. A solution which comes to mind might require the State to make, in claims under $50,000, a formal written offer to a claimant within six months after the claim is filed. If that offer was refused and the final court award was more than 20% greater than the State offer, then the trial court could be required to allow reasonable appraisal and counsel fees. This is just a curbstone suggestion but some thought along that line might be more productive than criticism of rule 25a of the Buies of the Court of 'Claims.
In the case at bar, the claimants’ appraiser relied upon the cost approach for his improved land fair market value. In his opinion, claimants’ building was a specialty and he so valued it. The State appraiser did not consider the building a specialty. He utilized the three usual approaches to market value to establish his fair market value for the improved parcel. He relied upon the market data approach.
Both appraisers utilized the market data approach to develop their values for the vacant land parcels.
We do not consider this building a specialty. We realize that neither appraiser could find a sale of a building improvement within four or five miles of subject property which was similar to this building improvement. However, it does seem obvious that “ If the building use were to be changed, such change could be accomplished by the expenditure of moneys to adapt the facilities to the new or different use ’ ’. (Kline & Son v. State of New York, Claim No. 47894, Nov. 3, 1969.) This building could have easily been transmuted into a number of different commercial uses from which income could have been derived. As stated in Samuelson v. Salamanca Urban Renewal Agency (34 A D 2d 369, 370): “ Beproduction cost as a measure of value is limited to a specialty which is a building designed for a unique purpose and which produces income only in connection with the business conducted in it ”.
We have accepted the State’s appraised before value for the improved parcel of $63,000.
We have considered both appraisers’ market data to establish the before market value of the unimproved commercial parcel. The State appraiser did not adjust his comparable .sales for the utility of the two frontages available to subject property. Although it was not a true corner property, it did have 120 feet frontage on Montauk Highway with a depth of 200 ± feet and 100 feet frontage on West Lake Drive with a depth of 160± feet. These depths were overlapping. We also find that the State overadjusted for the size of subject parcel when compared to *637 his comparables. Claimants’ unimproved parcel had a size, utility potential and location which made it a choice parcel for development to commercial use, particularly in this automotive age when off-street parking is at a premium. We find a before value for said parcel of $3 a square foot; or $84,000.
The fair market value of subject property before the appropriation was $184,200.
After examinig the after sales, we find that the fair market value of subject property after the appropriation was $83,100. We have allocated the following values to the component parts of the property: 2,000± square feet of commercial property at $.20; 18,200± square feet of commercial property at $2.50; and, Residential “ C ” property at $37,200. We realize our after value is larger than either appraised after value. The claimants’ appriaser incorrectly damaged the residential property. He also utilized the Davies Depth Factor to establish his after value and then added a 15% damage for impaired utility. This in essence duplicated his damage for that parcel. In consideration of the State’s after appraisal, we did not find that he gave sufficient weight to the double frontage available to the after property.
Claimants have been damaged in the sum of $101,100, of which $87,400 (rounded) was direct damage and $13,700 was consequential damage. We accept the State’s fair rental value of $400 for the temporary easement. Claimants did not present any figure for the temporary easement.
We viewed .subject property.