Daniel Becker, J.
This is a claim for the appropriation of claimant’s land pursuant to section 30 of the Highway Law which proceeding is described as Interstate Route 503, Route 17 Interchange to Route 208, Orange County, Map No. 568, Parcel No. 936, Map No. 598, Parcel No. 964 and Map No. 587, Parcel No. 958.
*441 These maps and descriptions were filed in the office of the Secretary of State on August 3, 1967 and in the office of the Orange County Clerk on January 12,1968. Personal service was made on the claimant on January 30,1968.
The claim was filed with the Clerk of the Court of Claims and the Attorney-General on October 3, 1968. The claim has not been assigned or submitted to any other court or tribunal for audit or determination.
The court adopts the descriptions of the appropriated property as shown on the maps and descriptions filed in the Orange County Clerk’s office, copies of which are attached to the claim and are incorporated herein by reference.
The original claimants Gelsomino Innamorato and Philomena Innamorato were the owners of the property by reason of a deed from Pasquale Agostino and Marianna Agostino, husband and wife, to Gelsomino Innamorato and Philomena Innamorato, husband and wife, dated February 7, 1953 and recorded in the Orange County Clerk’s office in Liber 1258 of Deeds at Page 52 on February 9, 1953. Claimant Gelsomino Innamorato died on April 16, 1970 and Philomena Innamorato was appointed executrix of his estate by the Surrogate Court of Orange County and letters testamentary were issued to her dated April 28, 1970. Based upon the stipulation of the attorneys, on June 2, 1970 an order was made by the Honorable Dorothea E. Donaldson, Judge of the Court of Claims, substituting Philomena Innamorato, as executrix of the estate of Gelsomino Innamorato, in place of Gelsomino Innamorato individually and amending the title of the claim accordingly.
Before the appropriation the claimants’ property consisted of 33.750± acres on the west wide of Route 208 in the Town of Montgomery, Orange County, New York. The property was generally rectangular in shape and about 15± acres of the property were used by the claimants as an automobile salvage yard. The property had no road frontage on Route 208 but there was a small access road into the property from Route 208 over which claimants had an easement.
The State appropriated 30.947± acres in fee for the construction of Route 84 and a service area leaving claimants with 2.803± acres of landlocked land.
Both appraisers agreed that the highest and best use of the property before the appropriation was as an automobile salvage yard. The appraisers also agreed that the highest and best use of the remaining 2.803± acres of land after the appropriation was for sale to a neighboring property owner. The court concurs with the appraisers with respect to those conclusions *442 and finds that these were the highest and best uses of the property before and after the appropriation.
The claimants’ appraiser evaluated the property before the taking as follows: Land — $236,821; Buildings ■ — $26,800 for a total of $263,621 which he rounded to $263,000. He appraised the after value of the land at $2,000 and fixes the claimants’ damages at $261,000, of which $244,000 was direct damages and $17,000 was consequential damages.
The State’s appraiser testified that the value of the land before the appropriation was $135,000, buildings and land improvements were $25,000, for a total of $160,000. He estimated that the value of the land remaining after the appropriation was $500 and that the claimants were damaged in the amount of $159,500. He assesses $148,800 of these damages to the direct taking and $10,700 to severance damages.
In 1968 the property and improvements were assessed for a total of $11,000. The equalization rate was 39%.
There were several buildings and various other improvements on the property. However, the claimants’ appraiser assigned a value for buildings and improvements of $26,800" and the State’s appraiser fixed the same at $25,000. Claimants’ appraiser evaluated the remaining parcel of 2.803± acres at $2,000; the State’s appraiser at $500. Hence the major dispute here is with respect to the value of the land before the appropriation. Roughly, the State’s appraiser fixed the before value of the land at $4,000 per acre; the claimants’ appraiser estimated it to be $7,000 per acre. By reason of zoning ordinances in the area it is difficult to establish an auto salvage yard where such a business has not been previously operated. Therefore, there is no question but that this particular parcel was more valuable than surrounding land because of its use as a junk yard.
The State made a motion at the trial to strike eight , of the comparable sales used by the claimants’ appraiser on the grounds that the claimants’ written appraisal did not contain adjustments of the comparable sales. That motion is now denied.
Rule 25a of the Rules of the Court of Claims (22 NYCRR 1200.27) provides for the filing and exchange of appraisals. Judge At/pert in Parisi v. State of New York (62 Misc 2d 378) held that the written appraisal must contain adjustments of comparable sales or the comparable sales may not be used at the trial. Judge Lengyel in Azzolini v. State of New York (63 Misc 2d 631) held that the appellate decisions require adjustments to be in the trial record but do not require that they be in the written filed appraisal.
*443 What we are now confronted with are the provisions of section 16 of the Court of Claims Act which is more liberal than rule 25a of the Buies of the Court of Claims. In my opinion, both section 16 and rule 25a should be read together and a claimant, under the circumstances in this particular case, should in fairness be given the opportunity to present oral adjustments. It should be pointed out here that the court is relying primarily on the claimants’ comparables No. 1 and No. 5 and the State’s comparable No. 233, which all involve the same property. However, the court does not condone the so-called “bare bones ” written appraisal in which the appraiser makes no adjustments. The purpose of rule 25a is to give each side an opportunity to see in advance the appraisal evidence that they will be confronted with at the trial. Judge Lehgyel pointed out in Assolmi v. State of New York (supra, p. 634) that adjustments of comparable sales are not required to be in the appraisal report. He said: ‘1 The appellate decisions require them to be in the trial record (Ridgeway Assoc. v. State of New York, 32 A D 2d 851, 853; Svoboda v. State of New York, 28 A D 2d 1056; Wright v. State of New York, 33 A D 2d 616; Verni v. State of New York, 31 A D 2d 727); and, do not as yet require .them to be set forth in the filed appraisal. Buie 25a of the Buies of the Court of Claims (22 NYCBB 1200.27), has not repealed or abrogated section 16 of the ¡Court of Claims Act. Furthermore, we do not believe a court rule can repeal, abrogate or amend a constitutional legislative enactment. (See Court of Claims Act, § 9, subd. 9.) As we all know, section 16 provides that either party to an appropriation claim may utilize comparable sales if they are served upon his opponent more than 20 days before the trial. Certainly, we would be making a nullity of section 16 if we held that a party could not state at the trial the manner in which it utilized the served comparable sales, i.e., the adjustments that were made. Therefore, it is our opinion that, although we prefer that a party state the adjustments of comparable sales in the filed appraisal, we cannot, until section 16 is amended or repealed, require such adjustments to be set forth in the filed appraisal ”. Legislative action is needed to correct the confusion which has resulted from the failure to repeal section 16 of the Court of Claims Act when rule 25a was adopted.
Both appraisers have submitted many so-called comparable sales. Most of them involved lands far different from the subject property in location and type of land. These were given very little weight by the court. One comparable, claimants’ *444 appraiser’s sale No. 2 involved a condemnation award for an auto salvage yard in the City of Newburgh, New York. The State moved to strike. The motion is granted. Awards for other condemned property are not admissible to prove the value of property in a condemnation case. (Duggan v. State of New York, 32 Misc 2d 638.)
The State made other motions to strike other comparable sales used by claimants’ appraiser but the court finds it is unnecessary to decide them because in arriving at a decision the court is relying to a great extent on only two of the comparable sales used by claimants, No. 1 and No. 5, and the State’s sale No. 233, which all involve the same property.
Both appraisers have submitted a,, sale from Mayer to Innamorato. This was the claimants’ comparable No. 1 and the State’s comparable No. 233. It was a junk yard bought by the Innamoratos as a replacement for the subject property on March 26,1968 about two months after the date of appropriation. The property consisted of 11.405 ± acres on Route 207 in Campbell Hall, Orange County, New York. It is located just a few miles from the subject property. It has 383± feet frontage on Route 207 which is a main highway and is bordered on the southeast by the Erie-Lackawana Railroad. At the time of the sale there were a number of old cars on the land and it was improved with a building containing a garage, a four-room apartment and two three-room apartments. The apartments produced $350 per month rental income. Attached to each end of this building are two other concrete block buildings, one used as an office and one used as a garage. The purchase price was $105,000. Claimants’ appraiser assigned $18,675 to the buildings; $1,300 to the inventory and $85,000 to the land. This is about $7,452 per acre for the land which is close to what he figured for subject land, namely, $7,000.
The State’s appraiser fixed the value of the buildings and improvements on the Mayer property to be of about equal value to those buildings on the subject property. From the sale price of $105,000 he allocated $5,000 to personal property,, approximately $15,000 for buildings and improvements, leaving a balance of $85,000 for the land or $7,456.14 per acre for the 11.4± acres of land. He then made adjustments and came up with a before value on subject property of $165,000 based on this comparable.
The claimants’ appraiser admitted, at least to some extent, that the claimants may have been under some pressure to buy at the time the Mayer property was purchased by claimants because the State was about to take possession of their property. *445 They needed a place to move their business. He minimizes this aspect of the sale but the court cannot help but feel that this factor influenced the purchase price of the Mayer property by the claimants on the upward side. It is significant that Mayer had purchased the very same property from Primavera et al. on July 13,1966, one and one-half years before the date of the taking, for a purchase price of $50,000. This sale is claimants’ comparable No. 5. Claimants’ appraiser downgrades the value of this sale as a comparable because he says it was sold by the estate of the previous owner and that it was evident that the beneficiaries of the estate sold the property below market value because they had no desire to continue to operate the junk yard. There is no evidence that the sale from Primavera to Mayer was a forced sale. On the other hand, since the State was about to take claimants’ property, that circumstance alone is some evidence that the purchase by Innamorato from Mayer was influenced by an element of urgency. This sales reliability as an indicator of value is questionable. “ The ‘ willing buyer ’ is, not an extraordinarily eager buyer, who cannot take time for bargaining, or who cannot find any substitute property if the owner of this particular property should insist on too high a price ”. (1 Orgel, Valuation Under Eminent Domain [2d ed.], p. 102, § 23; see Matter of City of New York [Ward’s Is.], 158 Misc. 684.) For this reason the court is adjusting the sale price downward to arrive at the value of the subject property.
The sale of the same property from Primavera to Mayer impresses the court as being made in good faith and in the ordinary course of business. It was an arm’s length transaction reflecting the fair and reasonable market value of the property at the time of the sale. The sale price was $50,000. Claimants’ appraiser allocated $20,000 of the purchase price to buildings and improvements and $30,000 to land with respect to that particular sale No. 5. This works out to $2,630.42 per acre. There was some dispute at the trial as to the purchase price but the claimants’ appraiser indicated that the revenue stamps attached to the deed were $55. He indicated that he verified the purchase price of $50,000 with the attorney involved in the transaction. The court finds that the purchase price in the sale Primavera to Mayer was $50,000.
The court has viewed the subject and the Mayer properties and finds them to be similar. The Mayer property is at least as valuable, if not more valuable, on an acreage basis as the subject property.
*446 The court is adjusting the sale from Mayer to Innamorato downward for the further reason that this sale took, place after the impact of Route 84 on property values had been felt in the area. It is well established that the benefit from the improvement may not be taken into account in fixing the value of comparable properties nor of the subject property. (Latham Holding Co. v. State of New York, 16 N Y 2d 41.) It is also adjusted downward because of the sale price of Primavera to Mayer. The court has made appropriate adjustment for the larger size of the subject property as compared with the replacement property that the claimants purchased.
The court has given careful consideration to the testimony at the trial, the appraisals and exhibits in evidence, the demeanor of the witnesses and the court’s view of the subject property.
The court finds that the fair and reasonable market value of the subject property before the taking was $195,550; that the fair and reasonable market value of the subject property after the taking was $500; and that the amount by which the claimants have been damaged is $195,050. Of this amount, $181,535 represents direct damage and $13,515 represents consequential damage.
The claimants are awarded the sum of $195,050 for all damages. Pursuant to the stipulation of the attorneys made at the trial, interest on the award will run from January 12, 1968 to July 12, 1968 and from October 3, 1968 to the date of entry of judgment herein.