Daniel Beckeb, J.
This is a claim for the appropriation of claimants’ land pursuant to section 30 of the Highway Law which proceeding is described as Interstate Route 503, Route 17 Interchange to Route 208, Orange County, Map No. 505, Parcel Nos. 818, 820 and 823.
The aforesaid map and descriptions were filed in the office of the Clerk of Orange County on April 8, 1968.
The claim was filed with the Clerk of the Court of Claims and with the Attorney-General on February 21, 1969 and has not been assigned or submitted to any other court or tribunal for audit or determination.
The court adopts the description of the appropriated property as shown on the map and descriptions filed in the Orange County Clerk’s office, a copy of which is attached to the claim and the same is incorporated herein by reference.
Claimants were the owners of the subject property by reason of a deed from Moot Associates, Inc., grantor, dated June 28, 1966 to Arnold Leider and Susan Leider, his wife, Rudolph Birnbaum and Frances Birnbaum, his wife, and Joseph E. Birnbaum and Joan Birnbaum, his wife, which deed was recorded in the Orange County Clerk’s office on July 11, 1966 in Liber 1747 of Deeds, at page 918.
Prior to the appropriation claimants owned subject property which consisted of 64.749± acres of vacant land fronting on Crotty Road in the Town of Wallkill, Orange County, New York. The land was irregular in shape. It had about 1,200± feet frontage on Crotty Road. The rear portion of the subject land bordered on the Erie-Lackawanna Railroad property. There was a small pond on the easterly side of the property. The property also bordered on Goshen Turnpike for about 851± feet.
The taking consisted of a fee taking by Parcel No. 818 of 0.364± acres and by Parcel No. 820 of 18.277± acres in fee without right of access. Parcel No. 823 was an easement containing 0.098± acres. By reason of the taking a triangle in the northwest corner of 8.74± acres was landlocked. There remained to the claimant 37.27'± acres with full frontage of 1,200± feet on Crotty Road in addition to the landlocked portion.
The claimants’ appraiser found a before value of $113,300 and an after value of $33,000. He fixed claimants’ damage at $80,300, as follows:
*1000 Land in fee........................... $ 32,621.75
Permanent Easement................... $ 171.50
$ 32,793.25
Bounded to.................... $ 32,800.00
He fixed consequential damage, as follows:
Damage by reason of severance from
railroad ................. $ 14,858.00
Severance to remainder of 37.27± Acres $ 32,611.25
Total Severance Damage....... $ 47,469.25
Bounded to.................... $ 47,500.00
He reached a total damage figure of $80,300.
The State’s appraiser found a before value of $84,000 and an after value of $38,000, with total damages at $46,000 which he itemized as follows:

Direct Damages

18.641 Acres taken at $l,300/acre... $ 24,233.00
0.098 Acres permanent easement at
$l,170/acre ................. $ 1,146.00
Total......................... $ 25,379.00
Bounded to.................... $ 25,400.00
Severance to remainder................ $ 20,600.00
Total......................... $ 46,000.00
On August 14, 1969 and after both the appraisals had been filed, the Attorney-General pursuant to section 16 of the Court of Claims Act served a notice on the claimants that on the trial he would offer evidence of a sale to a portion of the remainder of the property to Strick Corporation by deed recorded July 23, 1969 in the Orange County Clerk’s office in Liber 1825 of Deeds, at page 834, for a consideration of $175,000. Such proof was made on the trial of the claim.
The court has viewed the property.
After careful consideration of the testimony at the trial, the appraisals and other exhibits in evidence, the demeanor of the witnesses, and the court’s view of the subject property, the court finds as follows:
1. The highest and best use of the subject property both before and after the taking was for industrial development.
2. As noted above, the Attorney-General pursuant to section 16 of the Court of Claims Act served notice on the claimants *1001 that he would offer evidence of the sale of a portion of the remainder at trial.
Claimants moved to file an amended appraisal pursuant to paragraph (b) of subdivision 4 of rule 25a of the Rules of the Court of Claims (22 NYCRR 1200.27 [d] [2]). The motion was denied. The Appellate Division, Third Department, affirmed the Court of Claims denial. (Leider v. State of New York, 36 A D 2d 788.) The Appellate Division stated in its decision that while the sale was not included in the appraisal, evidence of the sale was before the court under section 16 of the Court of Claims Act.
At trial evidence of this sale was received. The parties however disagree as to the effect this sale has upon the appraisals. The claimants quite clearly take the position that this sale affects the before as well as the after values. This is apparent upon comparison of the values for subject property in his appraisal, with the new figures set forth in paragraph 5 of their conclusions of law.
The State maintains that this sale of a portion of the remainder affects only subject’s after value. The State’s position is that the sale of the remainder constitutes the conclusive after value for subject property. They agree with the claimants only to the extent that this sale has the effect of amending the after value of the appraisal.
A careful review of the law with respect to the import of section 16 of the Court of Claims Act does not support the contention of either party.
The court cannot agree with the Attorney-General’s interpretation of Mara v. State of New York (38 A D 2d 789). The Attorney-General contends that since Mara does not contain specific language which would prohibit sales under section 16 from amending the original appraisal, this after sale should have the effect of amending the after value set forth in the original appraisal.
The court on previous occasions has stated that section 16 of the Court of Claims Act and rule 25a of the Rules of the Court of Claims must be read together. (Innamorato v. State of New York, 65 Misc 2d 440.) Section 16 has neither been repealed nor abrogated by rule 25a. (Mara v. State of New York, supra.) The court permitted both appraisers to testify concerning this sale since it was properly before the court. (Leider v. State of New York, supra.) However, sales before the court pursuant to section 16 of the Court of Claims Act cannot be used to circumvent rule 25a of the Rules of the Court of Claims and therefore amend the original appraisal.
*1002 The underlying policy of section 16 is to allow the parties to offer evidence of sales not included in their original appraisals in support of the original appraisals. (Mara v. State of New York, supra; Thomas v. State of New York, 37 A D 2d 1030.) This would indicate that while evidence of these sales is admissible, they cannot be utilized to prove values beyond those set forth in the initial appraisal. (Cf. Farrington v. State of New York, 33 A D 2d 731, mot. for lv. to app. dsmd. 27 N Y 2d 531.) The parties to this action would use this sale to amend their appraisals. This would be contrary to the order of the Appellate Division. (Leider v. State of New York, supra.)
The court now finds itself in an unusual position. It has before it two appraisals which reflect a consequential damage to the subject remainder. Yet there is before the court a sale of the major portion of the subject property’s remainder in an amount greater than the value of the whole tract prior to the appropriation. While the court need not accept the sale as conclusive evidence of value, it must accord it substantial weight. (Dennison v. State of New York, 48 Misc 2d 778, affd. 28 A D 2d 28, affd. 22 N Y 2d 409.) In situations where there is a partial taking, damages are measured by determining the difference between the value of the whole before and the value of the remainder after the taking. (Diocese of Buffalo v. State of New York, 24 N Y 2d 320.) As Coke once said, “ Reason is the life of the law.” In applying the above rule where it appears that there has been an increase in value or the value has remained the same, reason dictates that there has been no consequential damages to the remainder.
Moreover, fair market value is the price for which a property would sell if there was a willing buyer and a willing seller under no compulsion to either buy or sell. (Keator v. State of New York, 23 N Y 2d 337.) WTiere there is a recent sale of a subject property and it is an arm’s length transaction between a willing buyer and a willing seller, it becomes the best evidence of market value. (Horn v. State of New York, 38 A D 2d 766.) The facts surrounding the sale of a portion of subject remainder leads this court to conclude that the sale was an arm’s length transaction. There can be little doubt that the major portion of subject incurred no consequential damages.
3. The court in reaching its values has accorded little weight to claimants’ appraisal. Claimants’ expert failed to establish a highest and best use for subject, merely stating that it could be used for industrial, commercial or residential development. *1003 In the experience of this court, that categorization is applicable to most every piece of property. Clearly, this is not a proper determination and seriously affects the probative value of the claimants’ appraisal. (Baker v. State of New York, 36 A D 2d 881.) In addition, claimants’ expert failed to set forth in either his appraisal or in his trial testimony what adjustments he made or the weight attributed to each adjustment. Consequently his appraisal is of little probative value. (Geffen Motors v. State of New York, 33 A D 2d 980; Svoboda v. State of New York, 28 A D 2d 1056.) Further, claimants’ appraiser failed to set forth in his appraisal or in his testimony any indication as to how he determined his after values. In effect, it constitutes a naked opinion without factual support and is of little probative value to the court. (Getty Oil Co. v. State of New York, 33 A P 2d 705.)
4. The court in arriving at its before value has considered all of the State’s sales with little weight given to sale No. 503-148. The State’s expert’s opinion as to various adjustments made to this sale was a contradiction of his opinion expressed in a prior appropriation claim in which the sale and subject were used. In addition, the court has adjusted sale Nos. 503-177 and 503-178 upwards for time. It cannot agree with the State’s expert’s opinion as to a minus $500 adjustment for location. These properties were only a few hundred feet west of subject property and across the railroad tracks. These properties when taken as a unit had frontage on a State highway and a county road. Subject had frontage on two well-maintained county roads. This would indicate that some ’adjustment may be necessary but not to the extent shown. Sale No. 503-176 was the sale of subject property to claimants which occurred on July 1, 1966. The only necessary adjustment indicated here would be for time.
5. The court finds the before value of subject property to be $1,500 per acre for 64.75± acres or $97,125.
6. The court finds the value of subject property after the appropriation to be $120,730, as follows:
37.27 Acres at $3,200/acre......... $119,264.00
.098 Acres permanent easement at
$l,600/acre ($3,200/acre less
50%) ...................... 156.80
8.74 Acres (landlocked) at $150/
acre (10% of before value).. 1,311.00
$120,731.80
Bounded to.................... $120,730.00
*1004 7. The court is aware that its values are outside the range of testimony, but there is sufficient support within the trial record for its determination. (Matter of City of New York [A. & W. Realty Corp.], 1 N Y 2d 428.)
Where sales are served pursuant to section 16 of the Court of Claims Act and they have the obvious effect of changing either the before or after values of a property, as set forth in the filed appraisals, perhaps the courts should permit the appraisal to be amended upon motion. The court is not advocating that in every instance where sales are served pursuant to section 16 this should be done. Rather, the implementation of this suggestion should be limited to those instances where it is clearly demonstrated that the sales indicate an amendment is necessary, such as the case at bar. To refuse to do so quite obviously results in the limited use of these sales in support of the values set forth in the original appraisals. Since a recent sale of a subject property is the best evidence of value, it seems unwise to limit its application to supporting values based upon sales that are of lesser probative value.
8. The court fixes claimants’ damages at $28,050, as follows:

Direct

18.641 Acres at $l,500/acre......... $ 27,961.50
.098 Acres permanent easement at
$750/acre .................. 73.50
$ 28,035.00
Rounded, to.................... $ 28,050.00
9. The court finds that there can be no award for consequential damages to the 8.74± acres landlocked as a result of this taking. The evidence at trial clearly proves that the impact of this project was to cause an increase in the value of subject property. Therefore, the court has no other choice than to find that this property incurred a benefit, thus offsetting any award for consequential damages. (Brand v. State of New York, 46 Misc 2d 645, mod. 26 A D 2d 747, affd. 19 N Y 2d 634.)
Once again this court is confronted with a situation wherein the State by reason of it appropriation has landlocked a piece of property rendering it nearly valueless. It becomes a burden upon the owner who must continue to pay taxes upon a parcel which is useless to him. His only alternative to avoiding these taxes would be to sell to an adjoining landowner at a price far below its true market value. It is obvious that neither of these alternatives inure to the benefit of the landowner. To *1005 remedy this situation, this court has suggested that a constitutional amendment be enacted enabling the State in its initial appropriation for a project, to include in its takings those areas which would otherwise be landlocked as a consequence of the appropriation. The amendment would be applicable solely in those instances where the State’s appropriation would result in landlocking a citizen’s property.
The court cannot help but feel that the rule of applying benefits to consequential damages should be changed to prevent its application in instances such as the one at bar. In most instances property which is landlocked by action of the State is damaged from 90 to 95%. In effect it is almost a direct damage. To now set off a benefit which is clearly limited to the usable portion of the remainder against the consequential damages to an unusable portion of the remainder seems manifestly inequitable. We concur fully in Judge Lengyel’s suggestion that the rule be changed so that the benefit be set off against usable remaining land. Under the law as it now exists however, the court is constrained to find that the benefits herein offset the consequential damages to the landlocked parcel of 8.74± acres. (Brand v. State of New York supra.)
10, The claimants are awarded the sum of $28,050 for all direct damages with interest thereon from April 8, 1968 to October 8, 1968 and from February 21, 1969 to June 22, 1971 when interest was suspended by order of this court dated June 24, 1971 and from January 18, 1972 to the date of entry of judgment herein.
11. All motions made at trial upon which decision was reserved and which have not been directly disposed of by this decision are hereby denied.